Uh, may it please the court. Good morning. My name is Michael Burke and I represent Kevin Ruiz-Castelo. And Mr. Burke, you can see the clock on the screen? I can, your honor. Yes. And I, I will attempt to reserve two minutes of my time for rebuttal. I will keep track of the clock and attempt to do that. Okay, good. There we go. So, all yours. Thank you, your honor. Uh, because the court, the government has conceded that Mr. Ruiz's case should be remanded to the district court for resentencing on an open record. Uh, with the court's permission, I'd like to focus this morning on the two sufficiency of the evidence challenges to the two counts of the indictment. Uh, Mr. Ruiz was charged with and convicted of dist, of distribution of a trial pornography video, um, on August 12th and August 13th of 2016. And he was convicted also in count two of possession of 13 images of child pornography, um, on or about May 2nd of 2017. With regard to the distribution count, um, we submit the case, uh, that the case should be reversed with regard to that count, that the conviction should be, uh, reversed because the government failed to present sufficient evidence that at the time of distribution in August of 2016, Mr. Ruiz knew that the video being downloaded by the Homeland Security agent contained, um, an image of a minor engaged in sexual activity. Um, as the court is aware from the briefs, the government, um, in conducting an investigation, searched for a hashtag value for a specific video and found that video on a peer-to-peer sharing network that showed that Mr. Ruiz's computer had a small portion of that video. It began downloading the video from Mr. Ruiz's computer. Um, and it essentially downloaded the video simultaneously or moments after Mr. Ruiz downloaded the video himself. There is no evidence at all concerning, um, the process by which Mr. Ruiz sought out that video, whether he actually sought out that video. The torrent in which it arrived in his case, whether the video was ever opened by Mr. Ruiz, um, it, all that we know is that nine months later, the, uh, agents in conducting their search for counsel. Counselor, am I right? And didn't I read that the video was, was found on the, as deleted or on the unallocated portion of the thumb drive. So didn't that, doesn't that mean that he moved it over to the thumb drive at that point and then deleted it? There is evidence from which the jury could find that he did move it. Yes, Your Honor, but there is no evidence suggesting that the video was ever opened before it was moved. Um, and I would submit, well, the one thing to keep in track, keep in mind is that the entire operating system of Mr. Ruiz's computer was reset on April 24th, 2017. It also reset from what I, we can tell from the record his torrent downloads. So the government was only just able to show that torrents downloaded to his computer after April 24th, 2017 went to his computer and then had to be downloaded. But even if so, we have no evidence at all that Mr. Ruiz, um, ever opened the video before it was deleted. But yes, Is your position counsel that he has to have opened it? I mean, it seems to me a jury here, you know, given the name of the video and given all of the other evidence that the jury heard, it seems to me a jury could fairly easily conclude that he knew what he was downloading when he downloaded it. So I see your point that, that, you know, he may not have opened it before the government had completed its download. But I mean, typically we do know what we're downloading when we download stuff from the internet. And, um, there's a lot of evidence. It seems to me that, that he wouldn't, that he, he, he downloaded lots of this kind of stuff from the internet. So isn't there sufficient evidence for a jury to have thought, well, he knew what he was downloading and he was sharing it, um, through the BitTorrent system when he was doing that. And isn't that, isn't that enough? I disagree Judge Van Dyke. And that is because the evidence that was presented to the jury concerned searches that were conducted by Mr. Ruiz many months after the download at issue in count one, there was no evidence at all concerning his activities of surrounding or near the date of the download in August of 2016. So is your theory then that, that I, yeah. So I got that from your briefs. Your theory I think would have to be that he'd never used child pornography up until this point. He just accidentally downloaded it and was accidentally sharing it or, uh, sharing something that he had actually downloaded, was shocked to find out it was child pornography. But then I think it is somewhat probative that it ended up on the thumb drive and deleted from the thumb drive. Cause you know, if this was an accident that he downloaded this, why would he copy it over to the thumb drive? Your Honor, I don't believe that accurately reflects our theory. Our theory is that to convict Mr. Ruiz of down of the distribution of October, excuse me, of August of 2016, the jury would have had to rely on mere propensity evidence, which is insufficient to support a conviction. The government presented extensive propensity evidence and evidence that occurred in 2017. None of that evidence could probably support a finding that Mr. Ruiz knew that on August 12th, 2016, he was distributing child pornography. Mr. Burke, Mr. Burke, this is Judge Schroeder. Do you, do you agree that he knew, the government proved that he knew the name? I do not agree with that, Your Honor. There is no evidence that he, that he knew the name of the video. The video was found in unallocated space on a jump drive or a thumb drive in his possession, but there's no indication that he ever, um, there's just no evidence to support that he even viewed it or looked at it or even knew it was there. Well, can he download it without knowing the name of it? Yes, Your Honor. Looking at the name of it? Well, there's no evidence that the name appeared anywhere on that. We don't know the torrent. A torrent can have multiple files. And as the court is aware, the government and Mr. Ruiz have been disagreeing in the last few days about whether there's evidence of how  that torrent could have been named, you know, all in the family. We just don't know. Um, and Judge Van Dyke, to go back to your, your point, we're not arguing that this was a surprise. The evidence would suggest that Mr. Ruiz did look for child pornography, but the evidence only addresses 2017. Um, and with regard to count two, we would submit that, that the outcome in that count is governed by this court's opinion in the flyer, the 13 images charged, um, show we're, we're in unallocated space. There's no evidence they were ever opened. And there's certainly no evidence that they were in his possession anywhere near the time of May 2nd, 2017. Help me out on that one, because I think there is evidence from which the jury can conclude that it was in his possession. That is to say it had not yet been moved over to the unallocated space on the time between April 24th and 27th. Is that not right? Yeah, I, we would disagree with that, Your Honor. And the reason for that is that all of the evidence the government shows, shows that Mr. Ruiz's computer was reset with a new operating system on April 24th. So everything shows that it was first connected to his computer. Every jump drive, every outside tower, whatever, shows that it connected out April 24th, but the jump drive itself, in fact, showed that the materials on there dated it all the way back to 2016. So the government's expert itself conceded that they could not know because April 24th was the date the system was reset. So the government itself conceded that it's possible that it had been loaded down to that jump drive long before April 24th? Yes, Your Honor. Well, in that case, what's the, what are the outer boundaries of honor about? Because the indictment charges honor about May 2nd. Your Honor, the government cited some cases with which we agree in its Rule 28J letter on Friday. So even a few weeks would be sufficient, but we have no idea. There was absolutely no evidence to suggest when those images were deleted from his computer and put in an allocated space. We simply do not know. With the court's permission, if there are no more questions, I will reserve the remainder of my time for rebuttal. Yes, sure, sure. Thank you. Mr. Hernandez, I wanted you to go earlier, but time for you to go now. Thank you. You're still muted. Oh, may it please the court. Rachel Hernandez on behalf of the United States. There is sufficient evidence that supported defendant's convictions. The defendant's own statement that at the time the search warrants were executed, he had been downloading child pornography for at least a year prior to the execution of the search warrants supports a reasonable inference that at the time he for at least three months bookmarks for child pornography found on his computer that date to six months prior to the distribution of the real Lola video support that as well. Additionally, the title of the real Lola video was apparent to him. The defendant acknowledged that when using the BitTorrent network, the names were apparent and these three facts support. In what form did you know? Mr. Judge, let's acknowledge the titles were apparent. He when he was interviewed at the time of the search warrant and this interview was played for the jury, he at. His statements are at ER 1607, he acknowledged that he could tell the name of the videos from the title at the top, he said, and that was specifically in reference to whether it said 10 to 13 year olds. He said also at ER 1616 that over the last year or two, he had looked at child pornography and knew it was child pornography because of the title. Additionally, Agent Hexel testified that the torrent came in as one file. There was an and that was at ER 421 and 453 that it came in as one file. And exhibit one, which is at ER 860 at line five, shows it came in at one file as one file. There was testimony at trial as to how the BitTorrent network works, that each image is assigned a hash ID or a hash value and it each item is unique. And so from that, under a sufficiency of the evidence, construing the facts in the most favorable to the government, there certainly was enough evidence that he knew the name. There was evidence that the name Lola and Lolita are common in child pornography circles. And that is at 401 and 403 in the record. And we have his statements as to timing. And I want to point out that during that interview, at one point the agent had suggested that he had been downloading child pornography for four years. And the defendant pushed back and he said, no, I've seen it a couple of times over the years, over the last year or two. So he narrowed the scope of that. And that statement that he had been doing it for a year, it closely tracks Agent Hexel's testimony at ER 562 and 563 that there were child pornography bookmarks dating to February 2016 found on defendant's computer. That is six months prior to the distribution of the real Lola video. These facts support that the defendant knew the contents of this video. So he characterizes that as propensity evidence. But it seems to me like that would support the idea that he knew what he was downloading. Is that your argument? That it supports the idea that when he was downloading it and distributing it, that he knew what he was downloading? This was not like the first time that he had downloaded child pornography. That is correct, Your Honor. I don't think that the facts presented here support the idea that that's a reasonable inference here, that this was the first time he downloaded child pornography. And the reason for that is his own statement about when he began downloading child pornography. The bookmarks, again, that's at 562 and 563, that date to six months prior to the distribution and the fact that Lola and real Lola are common child pornography terms. The defendant could know the name of this. He said when he downloaded these, he would know what was in these torrents. And that, again, was at 1607 and the agent and the agent testified that these are generally accurately named because this is how these websites generate ad revenue. And that's at 408. So, counsel, can I ask you a question that's related to the downloading of this video? I noticed the government has conceded to have the case go back for resentencing under Hernandez. Judge Fletcher wrote Hernandez, so I need to be careful saying what I think it says here because I've got the author right with us. But it says sharing child pornography files on a peer-to-peer network does not, in and of itself, demonstrate that the distributor expects he'll get something of value in return. And that makes a certain amount of sense to me as far as just a broad peer-to-peer networks because different peer-to-peer networks work differently. And as I read Hernandez, I think that peer-to-peer network sort of required somebody to open and allow this just back and forth. But BitTorrents work differently. There basically seems to me like it's built into the system, sort of a quid pro quo. You open up yours and other people share, too. So it's not clear to me that the statement in Hernandez that peer-to-peer networks do not, in and of themselves, demonstrate what would be necessary to have the increase in sensing should necessarily apply with BitTorrents. So why did you concede that it should go back? I guess I mean, I don't think there's anything I can do now that you know that we can do now that you've conceded that. But I'm not sure it should apply here. Well, I think, Your Honor, on the facts of this case and the evidence that we had at the time, and the evidence that was found months later, it seemed, our analysis was that Hernandez didn't apply here under these facts. We're not saying that it applies to all BitTorrent cases, but here under the facts presented to the jury, we believe that that was appropriate. Because if I recall correctly, reading the district court opinion, the district court judge said, you know, based on, you know, I had all this evidence and I, based on all of it, I think there definitely was, I don't know if they'll use the word quote-unquote, but there was definitely an exchange going on with what was going on here. So it, you know, it seems if we're just sending it back based on the fact that peer-to-peer networks don't, in and of themselves, I get that. But here, the fact that you use BitTorrents could be different. And the district court judge seemed to think so. So I don't know if it, I guess we're going to send it back anyway, because you conceded it. It wouldn't be fair to, it wouldn't be fair to the defendant here to not send it back because he didn't have an opportunity to respond. Can I address the possession question? The question I have is how, how much, what can you prove in the sense of when he Mr. Burke said the evidence that you have actually does not allow you to prove that it was possessed on those dates between April 24 and April 27. What's your position in terms of what you can prove in terms of when you might have moved it over to the thumb drive? I disagree with Mr. Burke's assessment. The, yes, there was testimony that the Windows was reinstalled on the computer and there was testimony that when that happens, things may change and can change. The agent testified that Windows reinstallation can change artifacts or may change them, but not necessarily that they did. And that's at ER 419. And then at ER 447, the agent testified that there was a record that the thumb drive was last connected on April 27th. And so there's a reasonable inference there that the jury could find on a sufficiency of the evidence review that there was, that thumb drive had been connected five to eight days prior to the on or about date charged in the indictment. And was there evidence that would suggest it could also have been connected earlier or is the evidence that could only have been connected at the earliest date on the 24th of April? I, I would say it's unclear. There is evidence that there were things on the thumb drive that dated to previous. But if I create a document in 2016 and I move it to a thumb drive in 2020, I don't think that changes the date. And that's the nature of the testimony is that there was there was evidence that there were things on that jump, jump, jump drive or thumb drive that were older, but there was evidence that that thumb drive was connected between those two dates. And I would also. And is there evidence then from which the jury can conclude beyond a reasonable doubt that the file with the 13 images had to have been transferred on or after April 24th? I think with the testimony that those were the two dates that those thumb drive, that that thumb drive connected, that the images first go to the desktop and for them to have been found on the thumb drive indicates that they were moved to that thumb drive and then categorized onto on the thumb drive and then deleted supports that he possessed it on or about that date. And additionally, I think those facts take it out of the Flyer unallocated space decision because in Flyer, this court said that there was no evidence that the defendant knew of the presence of the images. And here. I'm sorry, judge, another question about I know we're taking you over time, I hope that we can wrap this up fairly quickly and not keep you too long. I've got a question putting putting dates to one side. The question is whether what constitutes possession. As I read Flyer, one of the reasons the court held that he didn't possess was that the images were on unallocated space in the thumb drive and it would have taken specialized forensic both software and knowledge to retrieve them. And therefore, it was not possessed. Do you agree? Not as I'm not now talking about time. I'm talking about if it's on the unallocated space and the only way you can get access to the unallocated, something that's on the unallocated spaces, you need the special forensic software. Is he is he possessing or not possessing in that in that event? I think he still has dominion and control over it because he knew that they were deleted on that thumb drive. He moved them to the thumb drive. He deleted them. These were on a thumb drive on his keychain with his keys. I understand that. But once they're there, it's very difficult for him to access them. And he does not have the software and he may not even have the knowledge. So my question is access, not whether he put them there. The question is whether he has access now once they are there. Well, I think there is evidence that he has extensive knowledge of the BitTorrent network and how his computer files work. And I think the fact that it might be difficult for him to access them is not. Was there evidence that he had the forensic software that would have allowed him to retrieve it? No, he did not. There was no evidence of that. However, the fact that it might have been. Excuse me. Was there evidence as to how hard it is to get forensic software? There was not, to my knowledge, evidence of that, and that, I guess, would be my final point, Judge, is the fact that it might have been difficult for him to retrieve them does not impact the analysis here. He knew that it was deleted, unlike Flyer, who said he only shared them and downloaded and shared and didn't delete. We know here from this defendant's habits that he did delete them. And so I am well over time, but there's sufficient evidence as to count one that he possessed these. Judge Fletcher, can I now I'm a little bit confused. Can I can you indulge me for just 20 seconds? Questions. As I understood it, counsel, I thought the government's argument was he must have transferred them over at least eight days before. Of course, he deleted it after that. I didn't think you were arguing that he possessed them within the meeting because of Flyer. I didn't think you were arguing that he possessed them once he deleted them, but that the evidence was because he transferred over there was a period of time when he transferred, manipulated and then deleted. And then he possessed them during that time within eight days. Once they're deleted, I don't I don't think I didn't think you were arguing that in light of Flyer, that he possessed them then. It was the eight days. It was sometime before he deleted them. It's both, your honor, I believe we have evidence of both that first, he he did possess them within a reasonable amount of time on or about May 2nd, as charged in the indictment, that the evidence from how did he possess them? He possessed them. As images that he put on and they weren't deleted or he possessed them as deleted images, he possessed them as images, because we know from the testimony that the images download to the desktop and for the images to ever end up on the thumb drive and then to be deleted on the thumb drive, they had to have been moved over. You don't delete them to the thumb drive, right? It's not like they're somewhere else and then you delete them and they delete onto the unallocated space. You have to put them on the thumb drive first as live images or whatever, and then delete them for them to end up on the allocated space, as far as I understand. That's correct, your honor, and that's at ER 451. The images were deleted from the thumb drive after being moved. And and so, yes, that is the government's argument. They were live images. They were images. He moved them to the thumb drive and then he later deleted them from the thumb drive and that occurred on or about the date charged in the indictment. We additionally feel that Flyer is not it is not this is not in the realm of Flyer, but I won't go into that again because I'm over time and I will just say there is sufficient evidence, as we just discussed with count two, that he possessed them on or about the date charged in the indictment. And as to count one, that he had been a consumer of child pornography for three to six months prior to the time he distributed the Real Lola video. He admitted that the computer evidence supports that and the name of the video supports that as well under a sufficiency review. Thank you. Now, Mr. Berg, you sought to reserve two minutes. Why don't we put two minutes on the call? Thank you, Judge Fletcher. I appreciate that. One thing that the panel would ask the panel to keep in mind in this case is that the government waited almost nine months to execute the search warrant in this case. And as a result, the government was put in the position of of having difficulty actually establishing the charges that they brought against Mr. Ruiz. With regard to count one, the government's reliance on the propensity evidence. At the very best, would allow a jury to find that more likely than not, Mr. Ruiz knew what was on that video on August 12th, 2016. It does not in any way support a finding by a reasonable juror beyond a reasonable doubt that he did, in fact, know, which is what the law requires. So once again, the government is, as it did with the jury, is inundating the court with evidence of propensity evidence, which is, as we cite the Dillingham case from the Eastern District of Virginia, which we would encourage the court to to look at very closely, this is pure propensity evidence and it is improper. Again, with regard to count two, Your Honor, the only evidence that we have from the record is that the government's own expert testified that because the operating system of Mr. Ruiz's computer was reset on April 24th, it changed the dates and the government's own exhibits show a first connect date of April 24th for everything. So the defense experts exhibit, and this was not challenged, shows that the the images that issue in count two show a creation date of 2016. So we have no idea when those images were deleted and put in an allocated space. But because the government, I mean, the government correctly has argued that it has to be within a reasonable time, but we have no time frame from which a jury could find beyond a reasonable doubt that he was in possession of those images on or near May 2nd, 2017. So for those reasons, so do you think the time, I think Judge Fletcher may have asked something like this earlier, and I don't recall it. Do you think the time, you know, the indictment has an on or about date, right? Do you think that that date is material? Because generally speaking, we have case law that says it's not material. Do you think it's material in this case? And if so, why? Your Honor, it is not material in the sense where it is an element of the crime that they have to show he possessed it at that time. However, he, Mr. Ruiz, like any other defendant, is entitled to know what the government has charged him with, and that goes to questions of perhaps self jeopardy and the ability to present a defense. Here, the government has simply said, well, about that time, but they didn't present any evidence to submit. Well, we've got cases, counsel, that say there's a LaGue case that my clerk found from 1973 talking about a firearm possession charge. It was dated on or about a certain date, but it was almost a half a year earlier that they had actually, you know, the evidence in the case had shown the person illegally possessed this firearm. So that's like six months. I don't, I'm trying to figure out, possession of child, it's never legal to possess child pornography. So it seems to me like if it was within even six months, as long as there was beyond reasonable doubt evidence that they possessed it, why isn't that fine? But there is no evidence beyond a reasonable doubt that shows that he possessed it within six months. There is zero evidence to support that. Was this argument argued to the jury? Your Honor, there were motions, motions for rule 29 motions made, generic rule 29 motions made. Mr. Ruiz's defense attorney concerned the multiple bookmarks that Ms. Hernandez referenced. There are 20 some thousand individual bookmarks. And his defense was that he had a virus on his computer. That was the defense counsel's focus at trial. Let me ask you a separate question. Does it make any difference as to sentencing whether or not count two survives? It is to say, assume for purposes of my question that we put it to one side, count two, but we preserve count one. Does that make any difference to sentencing? Judge Fletcher, in all honesty, I haven't reviewed that recently. But my initial reaction is to say, no, it does not affect, it would not affect the sentencing range. It might affect the district judge's sentencing decision, though. OK, I get it. Any further questions from the bench? Thank you. Thank both sides for their arguments. The case of the United States versus Ruiz-Castello is now submitted for decision. Thank you.
judges: Schroeder, W. Fletcher, Vandyke